TIMOTHY A. TATARKA
PAULETTE STEWART
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 2nd Avenue North, Suite 3200
Phone:   (406) 657-6101
FAX:   (406) 657-6989
E-mail:   Tim.Tatarka@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN CHRISTOPHER WILLIAMS,<br><br>Defendant. | CR 25-15-H-MM<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS (DOC. 15) |

**INTRODUCTION**

Defendant, Ryan Williams, moves to dismiss his pending indictment for

violating 18 U.S.C. § 922(q)(2)(A), contending that he "meets the exception of

1

state licensure and verification contained in § 922(q)(2)(B)(ii)," based on *United States v. Metcalf*, __ F.4th __, 2025 WL 2699997 (9th Cir. 2025). Doc. 16. Williams misapprehends the import of *Metcalf*, which decidedly did not hold that the Montana licensure statute met the exception set forth in § 922(q)(2)(B)(ii). On the contrary, the Ninth Circuit confirmed that the Montana district court's conclusion that "Montana Individual Licensure does not meet th[e] requirement[s]" for the exception to apply is "the better reading of the statute." *Metcalf*, 2025 WL 2699997, at *5.

*Metcalf*'s "narrow" decision held only that "given the unique facts of th[a]t case,"—including the absence of any judicial ruling rejecting Metcalf's "plausible" reading of the statute and that Metcalf was told by state law enforcement that he was acting legally—the defendant lacked "fair notice" of the illegality of his otherwise innocent conduct. *Id.* at *11.

Williams, however, cannot claim the same absence of "fair notice" at issue in *Metcalf*. Most importantly, Williams assaulted the student in an East Helena school zone in May 2025, more than a year after the district court had ruled that the Montana law does not meet the requirements for the state licensure exception of § 922(q)(2)(B)(ii). In addition, unlike Metcalf, Williams can make no claim that he was informed by law enforcement that what he was not violating the law.

2

Finally, again unlike Metcalf, who the Ninth Circuit determined was engaged in the otherwise innocent conduct of patrolling his home to protect himself and his mother and initiated interaction with federal authorities, Williams is alleged to have pointed a gun at high school student in a road rage incident and then fleeing the scene.

## FACTUAL BACKGROUND

On May 1, 2025, Lewis & Clark County Sheriff's Deputy Jeff Stolz responded to East Helena High School after a juvenile student reported someone pointed a firearm at him while he was driving to school that morning. The student provided a physical description of the suspect and the involved vehicle.

When questioned about the incident, the student said he was driving through a neighborhood to school when he passed a vehicle heading in the opposite direction, it turned around and followed him. The vehicle then began acting erratically before cutting off the student and pulling in front of his vehicle. A man then got out of his car and approached the student's vehicle with a firearm in his hand and pointed it at the student, who was in the driver's seat. The man admonished the student for his driving and the student apologized to placate the man. The man then fled the scene and the student went to school, where he reported the incident to a member of the school administration. The student

3

described the man, his clothing, and the firearm. The firearm was a small chrome or silver colored pistol.

The sheriff's office canvassed the area of the incident and located a vehicle matching the description provided by the student, parked at 2725 Bandera Drive in East Helena, Montana. The vehicle was registered to Ryan Christopher Williams, and it was parked at Williams's residence. Deputy Stolz called Williams at the residence and requested he come outside unarmed. Williams complied and his physical characteristics matched the student's description.

During an interview with Stolz, Williams acknowledged the confrontation with the student and confirmed he pulled him over. Williams said he verbally warned the student about his driving. Williams acknowledged having the firearm with him during the incident, but claimed he never brandished it. He claimed he took the firearm because he was dusting off his plane and didn't need it while he was at home and to prevent scratches.

Sheriff's deputies located the firearm on the rudder of the plane on William's property as they talked with Williams's father-in-law. The firearm matched the description provided by the student, supporting the student's account of the assault. While speaking with law enforcement, Williams possessed a magazine for the pistol.

4

Williams was ultimately arrested for assault with a weapon.

On May 2, 2025, ATF SAs Enk and Sutton interviewed Williams at the Lewis and Clark County Jail. The statement was recorded. After waiving his *Miranda* rights: Williams confirmed that he lived in the neighborhood across the street from East Helena High School; he stopped in front of the student's car to warn him about driving too fast; he confirmed that location of the stop – at the intersection of Valley Drive and Bandera Drive, which was right across the street from the school; he confirmed he possessed a firearm but denied unholstering the pistol or pointing it at the student; he estimated that he was 100 yards from East Helena High School during the stop; he had not stopped anyone before this time; it was the first time that this car drove too fast through the neighborhood; he bought the pistol locally at Bob Wards or Capital Sports; he put it on the airplane when LCSO asked him to come out unarmed; his plane and landing strip are behind his house.

This incident was not the first time Williams was found to have acted dangerously with a firearm. In 2019, Williams followed a TSA agent he believed was harassing him and attempted to pull him over while armed with firearms and a tomahawk. A few days later, a female reported that she was being chased, that the vehicle sped past her and then slowed down to attempt to get her to stop her

vehicle. Williams was stopped and law enforcement recovered a Kimber 9mm pistol. Williams admitted to chasing several people around town in his vehicle and that he believed people driving black cars were bad. Williams was taken into protective custody after being deemed a danger to himself and others.

More recently, on April 22, 2025, only a little over a week before the incident at the school, Williams was brought to a local urgent care for manic depression. Williams had a firearm in his waistband and threatened to shoot one of his daughters. Williams was again taken into protective custody after being deemed a danger to himself and others.

## ARGUMENT

**I.  Montana's licensure scheme does not qualify for the exception to prosecution under the Gun Free School Zones Act, and Williams—unlike the defendant in *Metcalf*—cannot reasonably claim lack of fair notice because the argument he raises had been rejected by this Court a year before he committed the offense.**

In January 2024, the United States District Court for the District of Montana clearly held that "Montana law does not meet the requirements for the state licensure exception in § 922(q)(2)." *United States v. Metcalf*, No. 23-CR-103-BLG-SPW, 2024 WL 358154, at *2 (D. Mont. January 31, 2024). The court expressly rejected the argument that "Montana law complies with the requirements in § 922(q)(2)(B)(ii) because the Montana legislature explicitly enacted Individual

6

Licensure to comply with the Gun Free School Zones Act."¹ *Id.* at 3. The court acknowledged that it was "an issue of first impression," and concluded that "while the Act gives deference to each state's decision as to whom it will issue licenses and how those licenses are issued, the Act requires, at a minimum, that the state require some kind of process for law enforcement to determine whether a person is qualified to own a firearm before issuing a license." *Id.* Montana law, to the contrary, "automatically 'consider[s]' every person in the state to be licensed then claws back licensure from those who have committed violent felonies or are disqualified by the Montana Constitution."² *Id.* at *4.

The court concluded that "while Metcalf was licensed under Montana law to carry a gun, his license does not exempt him from the Gun-Free School Zones Act because Montana's individual licensure does not comply with federal law." *Id.* at

---

1 Section 922(q)(2)(B)(ii) provides: "[I]ndividual[s] possessing the firearm [who are] licensed to do so by the State in which the school zone is located or a political subdivision of the State, and the law of the State or political subdivision requires that, before an individual obtains such a license, the law enforcement authorities of the State or political subdivision verify that the individual is qualified under law to receive the license."

2 Montana Code Annotated § 45-8-30 provides: "[A] person who has not been convicted of a violent, felony crime and who is lawfully able to own or to possess a firearm under the Montana constitution is considered to be individually licensed and verified by the state of Montana within the meaning of the provisions regarding individual licensure and verification in the federal Gun-Free School Zones Act."

7

\*5. Following the court's order, Metcalf pleaded guilty to the charge, preserving his right to appeal.

In September 2025, the Ninth Circuit reversed and remanded. Importantly, the court made clear that it "agree[d] that the district court's reading of § 922(q)(2)(B)(ii) is the better reading of the statute." *Metcalf*, 2025 WL 2699997, at \*5. Contrary to Williams' assertion, the court did not hold that Montana's licensure requirement satisfied the exception set out in federal law.

Instead, in an opinion that the court twice characterized as "narrow" and four times emphasized was based on Metcalf's "unique" circumstances, the court ordered the case dismissed on the basis of lack of fair notice. 2025 WL 2699997, at \*9, \*11. The court held that while Metcalf's interpretation of the statute was "less natural" it was "*plausible*." *Id.* at \*5. The court explained, however, that, while Metcalf's plausible interpretation "may not be enough" to trigger the rule of lenity, "the unique facts of this case militate in favor of its application." *Id.* at \*9.

The court focused on three of those unique facts. First, "before the district court's decision in this case, there was *no* court decision that could have put Metcalf on notice that the license the legislature conferred upon him was, in fact, invalid to comply with federal law." *Id.* (emphasis in original); *see also id.* at \*11 ("Only after Metcalf was indicted did the district court—in the first ever judicial

8

decision addressing the efficacy of Montana's license—conclude that Montana's law failed to do what it said it did."). Second, Metcalf contended he was "informed by local authorities that it was permissible for him to be armed and that by possessing his firearm he was not violating the law." *Id.* Third, and relatedly, Metcalf reached out to federal authorities and "went to great lengths to articulate that he follows the law." *Id.* The court also referenced the fact that Metcalf's "possession of a gun on the sidewalk outside of his home was entirely innocent," and "lacked the intent needed to make his behavior wrongful." *Id.* at *10.

Williams sits well outside of the "unique circumstances" at play in *Metcalf*. Crucially, where the Ninth Circuit repeatedly emphasized that when Metcalf engaged in his conduct "*no*" court had addressed the issue of the application of Montana's licensure regime, Williams committed his assault over a year after this Court had held that Montana licensure did not meet the federal exception. Thus, Williams sits in the opposite position—rather than having "*no* court decision that could have put Metcalf on notice" that license was invalid to comply, 2025 WL 2699997, at *9, the *only* court to address the issue—the district court of the district in which he committed the offense—had already rejected the argument that Montana licensure provided an exception to the Gun Free School Zones Act.

The rule of lenity only applies where an "offender could not reasonably

9

understand" that his conduct was proscribed. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). Here, the district court had put Williams on notice that his conduct was proscribed, or rather, that his affirmative defense to the crime was meritless.[3] While Metcalf had no notice of the invalidity of the license until after he was indicted, 2025 WL 2699997, at *9, Williams cannot say the same. Any belief by Williams that ignored the district court's holding on this issue is not reasonable.

Not only did Metcalf not have the benefit of court ruling holding that the Montana licensure failed to meet federal requirements, but he also contended that local authorities informed him that "he was not violating the law," 2025 WL 2699997, at *9, further depriving him of notice that his conduct was illegal. Moreover, in a fact that the Ninth Circuit found relevant, Metcalf initiated contact with federal authorities, asserting a contemporaneous subjective belief that he was "following the law." *Id.* Williams can make no such claim of reliance. The district court's holding in *Metcalf* was on the books when he committed his offense

---

3 The fact that the licensure exception is an affirmative defense is important. By Williams's own admissions, he knew he committed the elements of the offense—he knowingly possessed a firearm within a few hundred yards of East Helena High School. To the extent that he contends that he believed his firearm possession within the prohibited area was excused based on his state license, he had the obligation to monitor the validity of that license.

10

and Williams can make no comparable estoppel argument that he was told by local law enforcement that his conduct was legal. On the contrary, Williams left the scene and was subsequently charged with assault in violation of Montana law for his conduct.

For that same reason, Williams cannot maintain that he was merely engaged in innocent conduct that he could not know was wrongdoing. It is undisputed that Williams chased the student and "pulled him over" in front of East Helena High School and exited his vehicle armed to engaged in a confrontation. He then fled the scene after assaulting the student, evidencing a consciousness of wrongdoing. While Williams contends that he did not brandish the firearm, the state of Montana brought charges against him for assault.

Williams's argument that he his actions were "entirely innocent," Doc. 16 at 4, is further undermined by Williams's history chasing down vehicles while armed and a recent threat to shoot his daughter. Williams was unquestionably the aggressor in confronting the student in front of the school with no plausible contention that he needed the gun for self-defense. All of this is a far cry from the otherwise "entirely innocent" "possession of a gun on the sidewalk outside of his home" at issue in Metcalf. Unlike Metcalf, who demonstrated his contemporaneous belief (confirmed by some extent by local law enforcement) that

11

he was following the law, Williams had a history of acting dangerously while armed and left the scene at the time; only after he was indicted did he claim that he had believed he was excepted for possession of a firearm in a school zone.

Williams chased a teen into a school zone for a confrontation while carrying a firearm in violation of the Gun Free School Zones. His attempt, after the fact, to justify that action based on reliance upon an interpretation of the statute that had been squarely rejected a year earlier by a court of the district in which committed the offense is unavailing. Williams reading of *Metcalf* would lead to the conclusion that no matter how many times this Court made clear that the Montana licensure regime failed to meet the federal requirements for an exception under § 922(q)(2)(B)(ii), defendants could continue to claim they did not have fair notice of the application of the Gun Free School Zones Act and engage in conduct such as Williams, brandishing a firearm at a student and fleeing the scene. That is inconsistent with *Metcalf*'s emphasis on the unique circumstances of that case as well as this Court's obligation to interpret the scope of a federal statute. Cf. *Marbury v. Madison,* 1 Cranch 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss should be denied.

DATED this 3rd day of November, 2025.

        KURT G. ALME
        United States Attorney


        */s/ Timothy A. Tatarka*
        TIMOTHY A. TATARKA
        Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached response contains 2,465 words, excluding the caption and certificate of compliance.

                                        KURT G. ALME
                                      United States Attorney

                                      */s/ Timothy A. Tatarka*
                                      TIMOTHY A. TATARKA
                                      Assistant U.S. Attorney