# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Cause No. CR 25-15-H-BMM** |
| Plaintiff, | |
| vs. | **ORDER ON**<br>**MOTION TO DISMISS** |
| **RYAN CHRISTOPHER WILLIAMS,** | |
| Defendant. | |

## INTRODUCTION

A federal grand jury indicted Ryan Christopher Williams ("Williams") on one count of possession of a firearm within a school zone in violation of 18 U.S.C. § 922(q)(2)(A). (Doc. 1.) Williams has filed two motion to dismiss the Indictment. (Docs. 15 and 18.) Williams argues that he meets the definition for the state licensure verification and exception outlined in 18 U.S.C. § 922(q)(2)(B)(ii). (Doc. 16 at 2.) Williams further challenges the constitutionality of the school zone gun prohibition of 18 U.S.C. § 922(q)(2)(A) as applied to him. (Doc. 18 at 1.) The Government opposes the motions. (Docs. 23 and 24.) The Court held a hearing on November 21, 2025.

## FACTUAL BACKGROUND

The Indictment charges Williams with one count of possession of a firearm

within a school zone in violation of 18 U.S.C. § 922(q)(2)(A) ("Gun-Free School Zones Act"). Williams lives in a residential neighborhood in East Helena, Montana that parallels Valley Drive. (Doc. 16 at 2.) East Helena High School is located on Valley Drive. (*Id.*)

Williams followed and pulled over a student who was driving to East Helena High School on May 1, 2025. (*Id.*) Williams contends that the student was speeding through the neighborhood adjacent to East Helena High School. (*Id.*) Williams got out of his car to talk to the student about driving too fast through the neighborhood. (*Id.*) Williams was wearing a holstered firearm at the time he got out of his car to talk to the student. (*Id.*)

The student alleges that Williams had a gun in his hand and pointed the gun at the student. (Doc. 23 at 3.) The student relayed what had happened to a school official upon arriving to East Helena High School. (Doc. 16 at 2.) The student relayed to a school official that a man had pointed a gun at him. (*Id.*) The student described the suspect, the suspect's car, and the firearm the student observed. (*Id.*) Williams told ATF agents during an interview following the interaction with the student that the encounter occurred approximately 100 yards from East Helena High School. (Doc. 23 at 5.)

Helena Law Enforcement located Williams from the student's description of the vehicle in the school neighborhood. The student's description of the gun

matched the gun that Williams possessed. Law enforcement found Williams's gun placed on the wing of an airplane parked behind Williams's home. (Doc. 23 at 4.)

Williams admitted to the confrontation with the student to law enforcement but denied ever having brandished his gun. (*Id*. at 2-3.) Williams acknowledged that he had the gun with him during the confrontation with the student. (*Id*. at 4.) Law enforcement arrested Williams on a state charge of assault with a weapon for the incident. (*Id*. at 3.) The grand jury indicted Williams on September 3, 2025. (Doc. 1.) The Indictment charges Williams for violating the Gun-Free School Zones Act by knowingly possessing a firearm within a school zone. (*Id*.)

## LEGAL STANDARD

A defendant may move to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). The "court is bound by the four corners of the indictment" when deciding a motion to dismiss under Rule 12. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). An indictment must provide a "plain, concise and definite written statemen" of the essential facts constituting the offense charged." Fed. R. Crim P. 7(c)(1). A court must accept as true the facts alleged in the indictment when analyzing whether a cognizable offense has been charged. *Boren*, 278 F.3d at 914.

## DISCUSSION

## I.    Whether Williams meets the state licensure exception of the Gun-Free School Zones Act (Doc. 15.)

The Gun-Free School Zones Act prohibits the knowing possession of any firearm within 1,000 feet of a school. 18 U.S.C. §§ 922(q)(2)(A). Section 922(q)(2)(B)(ii) ("License Exception") provides the following exception: "[I]ndividual[s] possessing the firearm [who are] licensed to do so by the State in which the school zone is located or a political subdivision of the State, and the law of the State or political subdivision requires that, before an individual obtains such a license, the law enforcement authorities of the State or political subdivision verify that the individual is qualified under law to receive the license." The License Exception provides that the person may be exempted from the prohibition of the Gun-Free School Zones Act if the person is "licensed and verified" under the state to possess the firearm within the school zone. *Id.*

Williams argues that his possession of the firearm within 1,000 feet of East Helena High School falls within the License Exception to warrant dismissal of the Indictment. (Doc. 15 at 3.) Williams contends that he holds a valid license to possess a firearm pursuant to Mont. Code Ann. § 45-8-360. (*Id.*) Williams mainly relies on *United Stated v. Metcalf*, 2025 WL 269997 (9th Cir. 2025). (*Id.*) A review of *Metcalf* proves instructive.

In *Metcalf*, the Ninth Circuit analyzed the conviction of the defendant who possessed a gun outside his home near an elementary school in Billings, Montana. 2025 WL 269997 (9th Cir. 2025). The defendant had been patrolling outside his

home with a shotgun before the schoolyear started. *Id*. at *4. The defendant patrolled with the shotgun to protect himself and his mother from a former neighbor who continued to violate an order of protection obtained by the defendant's mother. *Id*. Billings police officers visited the defendant on multiple occasions. *Id*. at *7. Billings police officers informed the defendant that his patrolling with the shotgun was not unlawful, but the officers requested that the defendant only patrol outside school hours. *Id*. The defendant refused to comply with the direction given by the officers. *Id*.

The defendant reached out to the Federal Bureau of Investigation ("FBI") to gather information on why the local Billings police officers were impeding his rights to carry firearms. *Id*. The defendant explained his conduct to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents. *Id*. at *8. The defendant informed the ATF agents of his conduct of patrolling with a gun outside his home, on the sidewalk, and around the block. *Id*.  The defendant acknowledged to the ATF agents that his conduct was occurring in a school zone, as he lived across the street from a Billings elementary school. *Id*.

The Government charged the defendant with violating the Gun-Free Zones Act following his conversation with ATF agents because the defendant possessed a firearm within 1,000 feet of a school. *Id*. (citing 18 U.S.C. § 922(q)(2)(A)). The defendant moved to dismiss the indictment arguing (1) that he held a license to

possess a firearm within a school zone under Mont. Code Ann. § 45-8-360 to meet the License Exception of the Gun-Free Schools Zones Act; and (2) that 18 U.S.C. § 922(q)(2)(A) was unconstitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). *Id*. The district court denied the defendant's motion to dismiss the indictment. *Id*. at *4. The defendant pleaded guilty and appealed the denial of his motion to dismiss. *Id*. at *4-5.

Montana's state firearm licensure procedure provides that any person who has not been convicted of a violent felony and is lawfully allowed to own or possess a firearm under Montana's Constitution "is considered to be individually licensed and verified by the state of Montana within the meaning and provisions regarding individual licensure and verification in the federal Gun-Free Schools Zones Act." Mont. Code Ann. § 45-8-360. The district court in *Metcalf* determined that "Montana law does not meet the requirements for the state licensure exception in § 922(q)(2)." *United States v. Metcalf*, No. 23-CR-103-BLG-SPW, 2024 WL 358154, at *2 (D. Mont. January 31, 2024).

The district court reasoned that, at a minimum, some kind of process by law enforcement proved necessary for licensure to be exempted from the Gun-Free School Zones Act. *Id*. The district court determined Montana's automatic licensing scheme to be inadequate because it "considered every person in the state to be licensed then claw[ed] back licensure from those who committed violent felonies

or are disqualified by the Montana Constitution." *Id*. The district court concluded on January 21, 2024, that Montana's Licensure Exemption did not exempt the defendant from the prohibitions of the Gun-Free School Zones Act's. *Id*.

The Ninth Circuit reversed and remanded the defendant's conviction. The Ninth Circuit determined that defendant's statutory interpretation of the License Exception to exempt him was "at least plausible." *Metcalf*, 2025 WL 269997, at *6. The assertion made by the state of Montana in § 45-8-360 regarding licensure proved sufficient for "verifying" under the License Exception. *Id*. at *16. The Ninth Circuit concluded that the defendant qualified for the License Exception due to this plausible reading and the lack of notice that the defendant's Montana license may be insufficient. *Id*. at *12.

Like *Metcalf*, Williams has not been convicted of a violent felony and otherwise lawfully could possess a firearm under Montana law. Williams holds a valid state license to possess a firearm within a school zone under Montana law. Mont. Code Ann. § 45-8-360. The question remains whether *Metcalf's* narrow holding applies to exempt Williams under the License Exception. *Metcalf*, 2025 WL 269997, at *29-30.

The Ninth Circuit ruling in *Metcalf* did not create a blanket determination that a person licensed under Montana's licensing scheme automatically falls within the License Exception. *Id*. Williams's understanding and reading of Montana's

licensing procedure may be "at least plausible." The Ninth Circuit noted, however, that a plausible statutory reading alone may not be enough to trigger the License Exception. *Id*. at *24. "[T]he unique facts of [Metcalf's] case militate in favor of [the License Exception] application." *Id*. The *Metcalf* holding proves narrow and limited to its unique circumstances.

Specifically, the Ninth Circuit concluded a reversal was warranted for specific reasons unique to the defendant including the following facts: (1) Billings law enforcement officers informed the defendant that his conduct and possession of the firearm did not violate the law; (2) the defendant took efforts to research the law and articulated to federal officials that he "went to great length [to] follow the law;" (3) the Montana state legislature informed the defendant that he was "licensed and verified" to possess a firearm within the meaning of the Gun-Free School Zones Act (Mont. Code Ann. § 45-8-360); and (4) the defendant did not have a court decision that came before his indictment to inform him of the illegality of his actions and/or the Montana licensure issue. *Id*. at *24-25. Without having court precedent saying otherwise, the Ninth Circuit also noted that the defendant's actions of possessing "a gun on the sidewalk outside of his home was entirely innocent." *Id*. at *29.  The defendant could not have had the requisite intent to make his actions unlawful. *Id*.

None of these unique circumstances apply here. Williams had court

precedent that the Montana licensure process did not meet the License Exception before the Indictment against him. The district court decided *United States v. Metcalf*, No. 23-CR-103-BLG-SPW, 2024 WL 358154, at *2, on January 31, 2024, 19 months before Williams was indicted on September 3, 2025. The decision would have put Williams on notice of the illegality of possessing a firearm within a zone school, regardless of Montana's licensing procedures. The Ninth Circuit issued its opinion reversing Metcalf's conviction on September 23, 2025, after Williams's alleged conduct and indictment.

No law enforcement officers informed Williams that his actions of stopping a student's vehicle with a firearm in a school zone were lawful. Williams's alleged actions of pulling over a student in a school zone while possessing a firearm, whether he brandished his gun, cannot be considered entirely innocent conduct. The facts and circumstances of Williams's case do not militate in favor of finding that the License Exception applies. *Metcalf*, 2025 WL 269997, at * 24. The facts and circumstances do not fall within the narrow holding in *Metcalf*. The Court denies Williams's motion to dismiss the indictment on the grounds that the Licensing Exception exempts him.

## II.     Whether the Gun-Free School Zones Act is unconstitutional as applied to Williams (Doc. 19)

The Gun-Free School Zones Act makes it unlawful for a person to knowingly possess a firearm within a school zone. The statute defines a

"school zone" as follows: "(A) in, or on the grounds of, a public, parochial or private school; or (B) within a distance of 1,000 feet of the grounds of a public, parochial, or private school." 18 U.S.C. § 921(a)(26). Williams takes issue with the firearm prohibition within the "1000-foot school zone boundary." (Doc. 19 at 2.) Williams argues that the "buffer zone" prohibition within the Gun-Free School Zone Act, as applied to him, violates his Second Amendment right to bear arms. (*Id*.) Wiliams relies on the analytical framework outlined in *Bruen*, 597 U.S. 1 (2022), to challenge the constitutionality of the Gun-Free School Zones Act. (*Id*.)

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The U.S. Supreme Court held that the Second Amendment guarantees "an individual['s] right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Like many other rights, the Second Amendment right is not unlimited. *Id*. at 626. *Heller* noted that "nothing in [this] opinion should be taken to cast doubt on . . . laws forbidding carrying of firearms in sensitive places such as schools and government buildings," and other "longstanding prohibitions." *Id*. at 626-27. The U.S. Supreme Court later confirmed the constitutionality of "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Bruen*, 597 U.S. at 30.

A court analyzing a Second Amendment constitutional challenge follows the guidance set out in *Bruen*. The Government must establish that our "historical

10

tradition of firearm regulation" supports § 922(q)(2)(A)'s restriction on gun

possession near a school. *Bruen*, 597 U.S. at 24. A court must "use analogies to

those historical regulations of 'sensitive places' to determine that modern

regulations prohibiting the carry of firearms in new and analogous sensitive places

are constitutionally permissible." *Wolford v. Lopez,* 116 F.4th 959, 979 (9th Cir.

2024) (quoting *Bruen*, 597 U.S. at 30)). Modern firearm prohibitions "in sensitive

places such as schools and buildings" may be justified "even if a modern-day

regulation is not a dead ringer for historical precursors." *Bruen*, 597 U.S. at 30.

Modern laws pass the *Bruen* test if they are "'relevantly similar' to laws that our

tradition is understood to permit," especially in "[w]hy and how [they] burden the

right." *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S.

at 29)).

An as applied constitutional challenge is "a narrower consideration" than a

facial challenge to a statute. *Buchanon v. Alexander*, 919 F. 3d 847, 852 (5th Cir.

2019). A court looks "beyond the language of the [statute]" and analyzes the

statute's "application to the particular circumstances of an individual." *Freedom

Path, Inc. v. IRS,* 913 F.3d, 503, 508 (5th Cir. 2019). The underlying facts drive an

as applied constitutional challenge under the Second Amendment. *United States v.

Allam*, 140 F. 4th 289, 295-96 (5th Cir. 2025) (citing *Justice v. Hosemann*, 771 F.

3d 285, 295 (5th Cir. 2014)).

The Government alleges that Williams brandished and threatened a student with a gun within 1,000 feet of East Helena High School. Williams claims that he never brandished the gun, but instead had the gun holstered during the interaction with the student. Pretrial resolution of whether Williams brandished the gun or merely possessed it would be appropriate only if the parties stipulated to facts. As noted by the Eighth Circuit in *United States v. Grubb*, Rule 12 permits pretrial resolution of a motion to dismiss an indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." 135 F.4th 604 (8th Cir. 2025) (quoting *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010).) Nothing requires the Government to present all the evidence in its case at this point in the proceedings. The undisputed facts establish that Williams tracked down a student to confront him with a gun in his possession. Williams chose to follow a student near the school and forced the student to stop his car. Williams proceeded to get out of his car, while in possession of a gun, to confront the student for speeding. This confrontation occurred on Valley Drive in front of East Helena High School. Williams concedes the encounter occurred approximately 100 yards from East Helena High School. These "concrete facts" drive the Court's analysis of Williams's as applied challenge. *Justice*, 771 F. 3d at 295.

The Second Amendment text plainly covers Williams's conduct of

possessing a firearm while driving and exiting his car. The Fifth Circuit in *United State v. Diaz*, 116 F. 4th 458, 462, 467 (5th Cir. 2024), similarly concluded that the Second Amendment covered the conduct of a prior felon who was found with a firearm in his car during a traffic stop. The Court further determines that the school property of East Helena High School itself may be considered a "sensitive place" given the "longstanding prohibitions" and regulations of firearms in schools. *See Heller*, 554 U.S. at 626; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 597 U.S. at 30. A court may "assume it settled that locations [like schools, assemblies, polling places, and courthouses] were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Wolford*, 116 F. 4th at 979-80 (quoting *Bruen,* 597 U.S. at 30). *See also Frey v. Nigrelli*, 661 F. Supp 3d 176, 206 (S.D. N.Y. 2023) (understanding Bruen to "settle[]" the characterization of schools as "sensitive places"). Williams also does not dispute the constitutionality of the firearm regulations on the school property and grounds, itself. (Doc. 19 at 4.)

The Court now must determine whether the modern prohibition of firearms "within 1,000 feet of a school," the "buffer zone," can be analogized to historical regulations of firearms. For this analysis, a court must consider "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 26-31). A district

court denied a Second Amendment challenge to the Gun-Free School Zones Act "buffer zone" prohibition on the basis that history and tradition support a finding of constitutional permissibility. *Metcalf*, No. 23-CR-103-BLG-SPW, 2024 WL 358154, at *11-23. *rev'd on other grounds*, *Metcalf*, 2025 WL 269997, at * 24. The Ninth Circuit did not analyze the defendant's Second Amendment challenge in its review of the case. *Metcalf*, 2024 WL 269997, at *24.

The Government provides numerous examples of historical regulations synonymous with the firearm ban at issue here. (Doc. 24 at 13-19.) The Government points to various firearm prohibitions on and across university campuses throughout history. (Doc. 24 at 14.) The University of Georgia prohibited students from "keeping[ing] any gun, pistol, . . . or any other offensive weapon in College or elsewhere," including "out of college." *The Minutes of the Senatus Academicus of the State of Georgia*, 1799-1842, at 86 (Aug. 1810). The University of Virginia Board of Visitors similarly restricted students, by implementing a regulation that "[n]o Student shall, within the precincts of the University . . . keep or use weapons or arms of any kind[.]" *University of Virginia Board of Visitors Minutes*, at 71-72 (Oct. 1824). The University of North Carolina prohibited students from keeping firearms or gun powder on campus in 1838. *Acts of the General Assembly and Ordinances of the Trustees, for the Organization and Government of the University of North-Carolina*, at 15 (Sept. 1838). Today many

states also prohibit firearm possession on school grounds, subject to certain limitations and exceptions, like the Gun-School Zone Act. *See, e.g.*, Ariz. Admin. Code § 7-4-102(3); Cal. Penal Code § 626.9(h), (i); D.C. Code § 7-2509.07(a)(2); Fla. Stat. § 790.115(2); Idaho Code § 18-3309(1), (2). The Gun-Free School Zones Act provides carve outs and exemptions allowing limited lawful gun possession specifically within the "buffer zone." § 922(q)(2)(B)(i)-(vii).

The Government also points to the historical traditions of legislatures regulating the carrying of firearms in or around schools and educational buildings. (Doc. 24 at 16.) Texas precluded persons from carrying "a pistol or other firearm" into "any school room, or other place where persons are assembled for . . . educational purposes" in 1871. Act of Apr. 12, 1871, ch. 34, § 3, 1871 Tex. Gen. Laws. 25-26. *See also* Act of Mar. 5, 1883, § 1, 1883 Mo. Laws 76; Act of Mar. 18, 1889, No. 13, § 3, 1889 Ariz. Sess. Laws 30-31; The Statutes of Oklahoma, ch. 25, art. 47, § 7, 1890 Okla. Sess. Laws 495-96. Montana's legislature outlawed carrying firearms in schools and educational settings in 1903. Act of Feb. 27, 1903, ch. 35, § 3, 1903 Mont. Laws 49-50.

The number of school-related shootings were few before the school firearm regulations. The reverse is true today as an "unprecedented societal concern" of school shootings exists. *See United States v. Allam*, 677 F. Supp. 3d 545, 565-66 (E.D. Tex. 2023). The historical regulations of prohibiting the possession and

carrying of firearms in schools and on campuses may not be a "dead ringer" to the Gun-Free School Zones Act. The premise of the historical regulations proves sufficiently like the "buffer zone" regulation. These similarities compel the Court to find the Gun Free School Zones Act to be constitutional. Legislatures enacted these firearm regulations to protect students from a "clear threat of physical violence to another," *Rahimi*, 602 U.S. at 698. Congress passed Section 922(q)(2)(A) with the primary purpose of "ensur[ing] the integrity and safety of the Nation's schools," 18 U.S.C. § 922(q)(1)(I).

The Government also provides historical regulations of firearm prohibitions, including "buffer zone" regulations around sensitive places like polling places, courts, and schools. (Doc. 24 at 18.) King Henry VIII in 1534 issued a law prohibiting the possession of arms within two miles of a court. 26 Hen. 8, c.6, § 6 (1534). Delaware's constitution prohibited militias from assembling "within one mile of a polling place" during the 24 hours before and after the elections closed. Del. Const. art. 28 (1776). The Louisiana legislature passed a law prohibiting the carrying of firearms on election day and within a half mile of any place of registration or revision of registration in 1870. Act of March 16, 1870, No. 100, § 73, 1870 La. Acts 159-60.

Historically, firearm regulations also concerned the surrounding areas of schools. For example, Missouri, in 1879, prohibited "any person" from discharging

"any gun, pistol or firearms of any description, in the immediate vicinity of any courthouse, church or building used for school or college purposes." Act of Apr. 30, 1879, § 1, 1879 Mo. Laws 90. The statute defined "immediate vicinity" to mean "a distance not exceeding two hundred yards." *Id.* § 3, at 91. The "buffer zone" prohibition proves analogous to the treatment of other sensitive areas throughout the nation's history.

The historical firearm prohibitions that include regulating a person's possession of a firearm surrounding "sensitive places" provides the Court useful analogies to the modern firearm prohibition of the Gun-Free School Zones Act. The why and the how of modern-day and historical regulations that burden the Second Amendment right involving sensitive places like schools establish the requisite similarity under *Bruen*. 597 U.S. at 29. Both the modern and historical firearm regulations on and around sensitive places, particularly schools, continue to be implemented for the same why and how: to protect and provide students with a safe educational environment by prohibiting firearms on and near the school. The historical analogues provided by the Government to the "buffer zone" prohibition outlined in the Gun-Free Schools Zone Act "establish that our tradition of firearm regulation supports the application of [§ 922(q)(2)(A)] to [Williams]" *Diaz*, 116 F. 4th at 471.

Other courts have held similar firearm prohibitions to be constitutional,

including regulating conduct within "buffer zones." The court in In *United States v. Lewis*, 2008 WL 5412013, at \*6 (D.V. I. Dec. 24, 2008), held that "*Heller* unambiguously forecloses a Second Amendment challenge to [§ 922(q)(2)]" because a school zone "is precisely the type of location of which *Heller* spoke." In *United States v. Class*, 930 F.3d 460, 464 (9th Cir. 2019), the Ninth Circuit explained that "the same security interests which permit regulations 'in' government buildings permit regulations of firearms on the property surrounding those building as well."

This case proves similar to *Allam* where the Fifth Circuit found § 922(q)(2)(A) to be constitutional as applied to the defendant. 140 F. 4th 289 (5th Cir. 2025). The defendant had been indicted for his conduct of parking within about 40 feet from a school while possessing a rifle while acting erratically and threateningly to the students. 140 F. 4th 289, 291-99 (5th Cir. 2025). *Allam* noted that the defendant had a clear vantage point of the school and could observe the students using the nearby crosswalk. *Id*. at 293. The defendant challenged his indictment asserting that the Gun-Free Schools Zone Act, as applied, violated his second amendment rights. *Id*. Like Williams, the defendant in *Allam* relied on the framework laid out in *Bruen*.

The Fifth Circuit concluded that the "buffer zone" firearm prohibition around schools, as applied, comported with the regulatory history and tradition.

The Fifth Circuit relied on a historical law at the time of founding that prohibited "com[ing] armed" to any polling place on election day or "any battalion or company" from remaining "within one mile" of a polling place during the 24 hours before the polls opened and until 24 hours after the polls closed. *Allam*, 140 F. 4th at 299 (citing Del. Const. art. 28 (1776)). These historical regulations offered "some evidence of the permissibility of limited buffer zones for the purposes of preventing threats of physical violence." *Id*. The historical regulations provided support for the Fifth Circuit's "conclusion that § 922(q)(2)(A) hurdles *Bruen's* test as applied here, i.e., that carrying firearms in a manner that poses a 'clear threat of physical violence to another,' *Rahimi*, 602 U.S. at 698, specifically to school children, could constitutionally be restricted *around* schools." *Allam*, 140 F.4th at 298 (emphasis added). *Allam* also emphasized that the defendant's conduct occurred only 40 feet from the school grounds. *Id*. This conduct by the defendant evidenced "the constitutionality of disarming a visibly threatening individual as near a school as [the defendant] was." *Id*. at *299.

Williams's relevant conduct far exceeds merely "driving and walking on a public road well away from the main building [of] East Helena High School" as contended. (Doc. 19 at 6.) The Government alleges that Williams brandished and threatened a student with a gun, only 100 yards from East Helena High School. Williams acknowledges that he was only 100 yards from the school when he

stopped the student while in possession of a gun. Williams's conduct occurred near the school, directly on the street in front of East Helena High School. Williams's conduct threatened a student going to school. The student found Williams's conduct so visibly threatening that he informed school officials that a man had confronted him with a gun when he arrived at school. Williams's conduct impeded the student's ability to arrive safely to school as intended.

The Court finds that the "buffer zone" firearm prohibition included in the Gun-Free School Zones Act proves constitutionally permissible as applied to Williams. Williams's conduct toward the student fails to support Williams's as applied challenge related to "limit[ing] a citizens ability to protect themselves when confronted with a serious threat outside the home" and that he "believed that his Second Amendment constitutional rights protected his ability to travel to his home while carrying a firearm even if it came within 1,000 feet of the school's property." (Doc. 19 at 6.) The undisputed facts establish that Williams was not just innocently traveling to and from his home with a firearm. Williams's conduct supports the "constitutionality of disarming threatening individuals as near the school as [Williams] was." *Allam,* 140 F. 4th at 299.

Accordingly, **IT IS ORDERED** that Williams's Motions to Dismiss the Indictment (Docs. 15 and 18.) are **DENIED.**

DATED this 12th day of December 2025.

Brian Morris, Chief District Judge
United States District Court