CHAD WRIGHT
Assistant Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Email: chad_wright@fd.org
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN CHRISTOPHER WILLIAMS,<br><br>Defendant. | **CR 25-15-H-BMM**<br><br>**DEFENDANT WILLIAMS' BRIEF IN SUPPORT OF OPPOSED MOTION FOR DISCOVERY SANCTIONS** |

**I.     INTRODUCTION**

On September 3, 2025, an Indictment was filed charging Ryan Christopher Williams with a single count of violating 18 U.S.C. §922(q)(2)(A) for allegedly possessing a firearm within a school zone. The charge stems from a May 1, 2025, incident where Mr. Williams stopped E.D., a 17-year-old student, who was speeding through Mr. Williams' subdivision at 60-70 miles per hour. E.D. went to school and claimed Mr. Williams pointed a gun at him. Mr. Williams admitted wearing a

1

holstered pistol, but he adamantly denied ever taking the pistol out of its holster. Contrary to its obligations under this Court's multiple discovery orders, the government did not disclose a police interview with an eyewitness who supported Mr. Williams' version of the interaction until the defense inquired into the existence of the eyewitness interview. The late disclosure violated the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and the disclosure orders issued pursuant to the Due Process Protection Act. To remedy the discovery violations, Mr. Williams requests dismissal of the Indictment, or, in the alternative, this Court should reconsider its Order Denying Motion to Dismiss (ECF No. 29).

## II.  PROCEDURAL HISTORY

On September 10, 2025, Mr. Williams was arrested on a federal warrant (ECF No. 2). On September 16, 2025, he appeared before Magistrate Judge John T. Johnston for an arraignment. The discovery deadline was September 19, 2025 (ECF No. 11, p. 1). Trial was set for November 18, 2025. *Id.* On October 15, 2025, this Court vacated Mr. Williams' trial date while it considered Mr. Williams' motion to dismiss the Gun Free School Zone charge on statutory and constitutional grounds. On December 12, 2025, this Court denied Mr. Williams' motions to dismiss (ECF No. 29). Trial is now set for March 10, 2026 (ECF No. 33).

///

///

### A. Magistrate Johnston's Discovery Order

On the same day as Mr. Williams' arraignment, Judge Johnston issued a text order pursuant to Rule 5(f) of the Federal Rules of Criminal Procedure.[1] (Exhibit A). The order directed the government to comply with its disclosure obligations under and its progeny and produce all information "that might reasonably be considered favorable" to Mr. Williams' case. Magistrate Johnston ordered the government to provide all such evidence in a timely manner. Magistrate Johnston's text order explained: "The consequences for violating either this Disclosure Order or the government's obligations under Brady include, but are not limited to, the following: contempt, sanction, referral to a disciplinary authority, adverse jury instruction, exclusion of evidence, and dismissal of charges." (ECF No. 7).

### B. Judge Morris' Discovery Order.

This Court's Scheduling Order required the government to provide discovery in compliance with the Due Process Protection Act. This Court repeated Magistrate Johnston's directive that the government had a continuing obligation to produce all exculpatory and "otherwise favorable evidence," including impeachment evidence, as to either to guilt or punishment without regard to materiality and even if the information is known only to law enforcement and not to the prosecutor. (ECF No.

---

[1] Rule 5 was amended as part of the Due Process Protection Act. (Pub. L. No. 116-182, 134 Stat. 894 (effective Oct. 21, 2020.))

11, p. 3). This Court further ordered that *Brady* material known at the time of indictment must be produced to defense counsel no later than two weeks following Mr. William's arraignment (ECF No. 11, p. 4). This Court ordered that the government has a continuing obligation to seek *Brady* and *Giglio*[2] material from law enforcement and regulatory agencies that are or have been involved in the prosecution of the defendant or in parallel proceedings or investigations involving the defendant (ECF No. 11, p. 4).

### C. Discovery Initially Provided by the Government.

On September 17, 2025, the government provided 81 pages of discovery. The government also provided digital discovery including bodycam video footage from four Lewis and Clark County Sheriff's officers. The bodycam footage provided documented interviews with subdivision residents to see if they had witnessed, or had Ring camera footage of, the interaction between Mr. Williams and E.D. The defense learned of a potential witness through a police report created by Lewis and Clark County Sheriff's Corporal Cody Criner (Exhibit B). The report was not included in the September 17, 2025, discovery. The report identified Michelle Thompson as potential eyewitness. On December 1, 2025, the defense requested

---

[2] 405 U.S. 150, 153-54 (1972)

Corporal Criner's May 1, 2025, bodycam footage of the interview with Ms. Thompson. The government provided the interview on December 11, 2025.

Ms. Thompson witnessed the interaction between Mr. Williams and E.D. as it took place in front of her house. She called law enforcement in response to earlier Sheriff canvassing of the subdivision (Exhibit C)[3]. That morning, Corporal Criner informed her brother an individual had pulled a gun on another person[4]. Later in the day, when Deputy Criner returned to the house, Ms. Thompson described a dark-haired man, age 40-45, wearing dark clothing and a baseball cap get out of a dark colored sedan and walk to another small sedan. The sedans were parked on either side of her driveway. She did not hear yelling and thought it was somebody's father talking to their kid. When asked about firearms she said: "I didn't see a weapon or anything like that." (Exhibit D).

### III.  ARGUMENT

The late disclosure, at the defendant's request, of the eyewitness account of the interaction between Mr. Wiliams and the youth accusing him of pointing a gun violates the government's obligation to provide *Brady* and *Giglio* materials and

---

[3] Although the government provided other Call for Service logs from 2019, it did not provide the Call for Service logs related to Ms. Thompson contacting law enforcement.

[4] Corporal Criner's bodycam interview with Ms. Thompson's brother was not disclosed until December 11, 2025.

violates the combined discovery orders of this Court and the Magistrate Court. Even inadvertent failure to disclose may violate this duty, which does not require a criminal defendant's request. *See United States v. Bruce*, 984 F.3d 884, 894 (9th Cir. 2021). This Court should remedy the violations by dismissing the charge against Mr. Williams, or, in the alternative, by reconsidering its Order Denying Motion to Dismiss.

### A. The late disclosure of Officer Criner's report and interview of Michelle Thompson constitutes a *Brady* violation.

A *Brady* violation is made up of three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the government, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v.* Greene, 527 U.S. 263, 281-282 (1999). The government's failure to disclose Ms. Thompson's interview violates *Brady* because it satisfies all three factors.

### 1. Ms. Thompson's eyewitness account provided exculpatory information and impeached E.D.'s claims to law enforcement.

Ms. Thompson's eyewitness account is both exculpatory and provides valuable impeachment evidence. Exculpatory evidence is evidence that is "material either to guilt or punishment." *Brady*, 373 U.S. at 87. "Impeachment evidence is exculpatory evidence within the meaning of *Brady*." *United States v. Blanco*, 392

F.3d 382, 387 (9th Cir. 2004) (*citing Giglio v. United States,* 405 U.S. 150, 154 (1972).

Ms. Thompson's account is exculpatory because it supported Mr. Williams' repeated assertions that he never removed his handgun from its holster. Ms. Thompson's account provides impeachment evidence because she did not see the things the E.D. claimed happened. E.D. demonstrated to law enforcement Mr. Williams pointing a gun at him with a fully outstretched arm from the moment Mr. Williams got out of his car. (Exhibit E[5] *filed under seal* pursuant to 18 U.S.C. §3509(d)(1)(A) and CR 49.3(a)(2)(G)). Ms. Thompson saw Mr. Williams get out of his black sedan and approach E.D.'s car, but, contrary to E.D.'s description, she did not see Mr. Williams with his arm outstretched and pointing a gun. She did not hear any yelling. Rather than the forceful confrontation portrayed by the government[6], Ms. Thompson assumed it was a father interacting with his child. Her description would explain, and give impeaching material, to question why E.D. told law enforcement that he did not want anything to happen to Mr. Williams.

///

---

[5] Only the relevant portion of E.D.'s video interview is provided because there were audio problems with the full recording.

[6] "It is undisputed that Williams chased the student and 'pulled him over' in front of East Helena High School and exited his vehicle armed to engaged [sic] in a confrontation." (ECF No. 23, p. 11).

2. **The report and video evidence from Ms. Thompson's interview was suppressed**.

Material evidence favorable to the accused must be disclosed and this duty extends "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Moreover, the government must "gauge the likely net effect of all such evidence" to the case at hand. *Kyles v. Whitley,* 514 U.S. 419, 437 (1995).

Corporal Criner's May 7, 2025, report has never been provided by the government through discovery. Mr. Williams was misled into thinking it had all the digital discovery, because other videos provided by the government showed officers canvassing the subdivision for eyewitnesses and Ring camera footage. However, the electronic discovery did not include Corporal Criner's recorded interaction with Ms. Thompson's brother. Corporal Criner told the brother that an individual had pulled a gun on another person earlier that morning in front of their house. Because of this contact, his sister, Ms. Thompson, would call the Sheriff later to report that she saw the incident. Once again, misleading Mr. Williams into believing he had the full discovery, the government produced Call for Service reports involving Mr. Williams from 2019 and 2022 (USAO 44-49 and USAO 21-25). But the government has never provided the May 1, 2025, Call for Service reports identifying Ms. Thompson as a witness.

///

On December 1, 2025, the defense requested Corporal Criner's video interview of Ms. Thompson. The government did not provide Corporal Criner's investigative materials until December 11, 2025. Corporal Criner's investigation was complete and fully reported by May 7, 2025, and entered with the controlling investigative number: LC250740.  On May 8, 2025, ATF Special Agent Caleb Enk reviewed the Lewis and Clark County Sheriff's Office reports under LC250740 regarding the arrest of Mr. Williams (USAO 006). The joint investigation means that the government is charged with knowing about Corporal Criner's reports and his video interview of the eyewitness.

**3. Third, Mr. Williams was prejudiced by the untimely disclosure**.

For purposes of a *Brady* violation, "material and prejudicial have the same meaning." *United States v. Kohring*, 637 F.3d 895, 902 n.1 (9th Cir. 2011). If there exists a reasonable probability that, had the evidence been timely disclosed to the defense, the result of the proceeding has been undermined. *See, United States v. Bagley,* 473 U.S. 667, 682 (1985) *and Kyles*, 514 U.S. at 434. If a reviewing court finds a material *Brady* violation, "there is no need for further harmless-error review." *Kyles,* 514 U.S. at 435.

Here, although the eyewitness interview was turned over before trial, all briefing on the licensing and constitutional challenges had been completed and a hearing on the challenges was. They day after the government's disclosure of the

9

eyewitness testimony, this Court would deny Mr. Williams' motions to dismiss. In doing so, it relied heavily on the government's version of the interaction between Mr. Williams and E.D. As to the core issues, this Court found that Mr. William's conduct led to E.D. informing school officials that Mr. Williams threatened him with a gun (ECF No. 29, p. 20.). This Court concluded "the undisputed facts" established that Mr. Williams was not innocently traveling to and from his home with a firearm. Instead, this Court held his supposedly threatening conduct towards E.D. meant that he could not carry a firearm within 1000 feet of the school. *Id.*

Even less crucial details have been contradicted by Ms. Thompson's eyewitness account. This Court held that the "concrete" facts included the fact that Mr. Williams was within 100 yards of East Helena High School (ECF No. 29, pp.12 and 20). Ms. Thompson explained that the sedans were on the north half of Bandera Drive parked on either side of her driveway:



10

At 655 feet, the interaction was double the distance this Court determined was a "concrete fact." More importantly, Ms. Thompson's eyewitness account would have given credence to law enforcement's obligation to evaluate the veracity of E.D.'s description of the interaction.

### B. Holding back the eyewitness account violated the courts' discovery orders.

The Due Process Protections Act amended the federal rules of criminal procedure to require district courts to issue, at the outset of every criminal case, an order confirming the prosecutor's disclosure obligations under *Brady*, and the consequences for violating the order. "The government cannot with its right hand say it has nothing while its left hand holds what is of value." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995). The prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles* at 437. Where prosecutors conduct a joint investigation, the prosecutor's duty extends to reviewing the materials in the possession of the other agency for *Brady* evidence. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). This Court specifically ordered the government to comply with its continuing obligation to seek *Brady* material from law enforcement conducting parallel investigations (ECF No. 11, p. 4).

11

Here, the Lewis and Clark County Sheriff's investigation formed the heart of Mr. Williams' federal case. The day after he was arrested for state charges, Mr. Williams was interviewed by ATF agents in the Lewis and Clark County jail. Mr. Williams confirmed he had a firearm but stated he never touched it, never brandished it, never dis-holstered it and mistakenly believed it was not visible because of the jacket he was wearing. Near the conclusion of the interview, SA Enk told Mr. Williams: "the case would continue to be investigated and any other available witnesses or surveillance video would be interviewed/reviewed to determine what occurred." (USAO 16). By the time Mr. Williams was arraigned on September 16, 2025, the government was similarly charged through this Court's discovery orders with reviewing all the video evidence and knowing about Ms. Thompson's exculpatory interview.

"Disclosures 'must be made at a time when [the] disclosure would be of value to the accused.'" *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (quoting *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988)). *Parker v. County of Riverside*, 78 F.4th 1109, 1112 (9th Cir. 2023). Magistrate Johnston ordered the government to produce favorable information in a timely manner (ECF No. 7). This Court explained that the obligation to provide *Brady* material in a timely manner

12

operated independently of its *Jencks*[7] and Rule 16 obligations (ECF No. 11, p. 3). This Court also defined what a timely disclosure entails:

> A "timely manner" means:
> (a) *Brady* material known at the time of indictment (other than *Giglio* impeachment material) must be produced to defense counsel no later than two weeks following the defendant's first appearance in this District, regardless of whether the parties are engaged in plea discussion;

(ECF 11 at 4). The government did not meet either the common understanding of a "timely" disclosure or this Court's two-week disclosure requirement.

The government violated Magistrate Johnston's and this Court's discovery orders. "[T]he [district] court has inherent authority to enforce its specific discovery order". *United States v. W.R. Grace*, 526 F.3d 499, 502 (9th Cir. 2008) This Court also has broad discretion to fashion remedies for the violation of discovery orders. *See, e.g.*, *United States v. Baker*, 10 F.3d 1374, 1398 (9th Cir. 1993) (citation omitted). Sanctions can be determined even if the discovery order was violated "without willfulness or prejudice." *United States v. Talbot*, 51 F.3d 183, 188, n. 5 (9th Cir. 1995), *see also* 516. *Grace*, 526 F.3d at 514-15 (quoting *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (quoting *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)).

///

---

[7] Jencks Act, 18 U.S.C. §3500.

## CONCLUSION

Four months after it charged Mr. Williams, the government turned over the bodycam recorded interview with Michelle Thompson. The late and incomplete disclosure violated the Court's Order, the Rules, Mr. Williams' Fifth Amendment due process rights, and his Sixth Amendment rights to trial, confrontation, compulsory process, and effective assistance of counsel. *See, Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) ("The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.")

Mr. Williams is requesting that this Court dismiss the Indictment, or, in the alternative, reconsider its Order on Motion to Dismiss (ECF No. 29).

RESPECTFULLY SUBMITTED this 12th day of January, 2025.

/s/ Chad Wright
CHAD WRIGHT
Assistant Federal Defender
Federal Defenders of Montana
Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Local Rule 7.1(d)(2) (as amended). The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains less than 6,500 words. (Total number of words: 2,834 excluding tables and certificates).

RESPECTFULLY SUBMITTED this 12th day of January, 2025.

/s/ Chad Wright
CHAD WRIGHT
Assistant Federal Defender
Federal Defenders of Montana
Counsel for Defendant

## CERTIFICATE OF SERVICE
### L.R. 5.2(b)

I hereby certify that on January 12, 2025, a copy of the foregoing document was served on the following persons by the following means:

<u>  1  </u>   CM-ECF

<u>  2  </u>   Mail

1. CLERK, UNITED STATES DISTRICT COURT

1. PAULETTE STEWART
   Assistant United States Attorney
   United States Attorney's Office
   901 Font Street, Suite 1100
   Helena, MT 59626
     Counsel for the United States of America

2. RYAN CHRISTOPHER WILLIAMS
     Defendant

            /s/ Chad Wright
            FEDERAL DEFENDERS OF MONTANA